## TEXAS MIDLAND R. CO. v. HURST.
### (No. 2922.)

(Court of Civil Appeals of Texas. Texarkana. May 20, 1924. Rehearing Denied May 29, 1924.)

**1. Release ☞16—Is contract enforceable according to terms in absence of fraud or mistake.**

A release of liability for personal injuries is contract, and must be enforced according to its terms in absence of fraud or mistake, mere failure to read it before signing furnishing no ground for avoidance.

**2. Release ☞57(2) — Evidence held not to show fraud or mistake invalidating release of claim for personal injuries.**

In section foreman's action 'for injuries, evidence *held* not to show fraud or mistake, invalidating release pleaded by defendant railroad.

Appeal from District Court, Hunt County; Newman Phillips, Judge.

Action by B. B. Hurst against the Texas Midland Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Terry & Brown, of Terrell, and S. W. Marshall and Coke & Coke, all of Dallas, for appellant.

L. Dillard Estes, of Commerce, and Evans & McCoy, of Greenville, for appellee.

HODGES, J. In February, 1921, the appellee was employed as a section foreman in the service of the appellant. On the 5th day of that month he was injured while on a motor car used by him in the performance of his duties. He later filed this suit and recovered a judgment for $2,000 as damages. The car was the private property of the appellee, but he was required to use it in going over the railroad track. Repairs to the car, when needed, were usually made in the railroad shops by the agents of the appellant.

As a ground of liability the appellee alleged and proved that the car had previously been sent to the railroad shops for repairs, and was returned to him for use about the 1st of February. On the day of the injury he made the first trip with the car after the repairs, going north from Commerce over his section. In passing over the frog of a switch at a station on the railroad he was compelled to stand up in order to operate the car, and, while standing, a jolt occurred which threw him back into the seat. In falling he struck the lower extremity of his backbone against a protruding bolt which had been put into the handhold back of the seat by the appellant's agents in making the repairs. He claims that those agents had negligently inserted the bolt from the under side of the seat, so that the end on which the nut was screwed extended above the seat. It was this portion of the bolt with which he came in contact, resulting in the injuries of which he complains.

Among other defenses, the appellant pleaded a release executed by the appellee in April following the injury, the consideration being the payment by the company of a bill for medical attention amounting to $9. To avoid the legal effect of that release the appellee pleaded that he had previously been misled by the appellant's claim agent as to what kind of an instrument he would be required to sign in order to have his doctor's bill paid by the company; that he signed this instrument hurriedly, without reading it or the accompanying letter from the claim agent. He testified that if he had known the instrument he was signing was a release of any further claim against the appellant on account of his injuries he would not have signed it.

In answering special issues submitted by the court the jury found that the appellant was guilty of negligence in the manner of repairing the car, and that such negligence was the proximate cause of the injury. The jury also found that at the time the appellee executed the release he did not know that he was releasing the appellant from further liability on account of his injuries, and did not sign it for that purpose.

In this appeal it is insisted that under the evidence the court should have given a peremptory instruction in favor of the appellant, on the ground that the release was a binding settlement of the plaintiff's right of action. Since we conclude that this proposition is correct, it is unnecessary to discuss other questions presented in the appeal. The following is, in substance, appellee's testimony upon that issue:

A few days after the injury he called in his family physician, who made three different visits, giving him the usual treatment in such cases. In a written statement made some time later the physician gives the following diagnosis of the plaintiff's injury:

"I called to see Mr. B. B. Hurst on the 5th of February, 1921. He was suffering from what appeared to be a contusion, or bruise, on the gluteus maximus muscle somewhat to the right of the lower lumbar vertebræ. I treated it, and saw him again on the 10th of February, and again on the 12th, when I lanced it evacuating a small quantity of pus. Recovery was slow,

and there is some tenderness at present. Otherwise seems to be about normal.

"W. R. Cate, M. D."

This statement was dated April 21, 1921. Appellee remained away from his work on account of the injury about a week or ten days, but did not make any report of his condition to the claim agent of the appellant. Some time after he returned to work he had his physician send in to the company for payment his bill of $9. For some reason this bill was not paid when presented. Appellee then interviewed the claim agent upon the subject, and was told by the latter that it would be necessary for the company to have a "showing" from the doctor that he (appellee) was injured while in the service of the company, giving the character of the injuries and the services rendered by the physician, before the claim would be paid. Appellee had been in the service of the company "off and on" 10 or 15 years, and had been contributing small amounts monthly to what was known as the "hospital fund." He did not go to the hospital, nor was he treated by any hospital doctor, but he expected his physician to be paid out of the hospital fund. Several weeks after the interview with the claim agent he received from the latter the following letter:

"Texas Midland Railroad, Office of General Claim Agent.
"R. M. Patton, Gen'l Claim Agent.
            "Terrell, Texas, April 19, 1921.
"P. 1. 71.
"Mr. B. B. Hurst, Section Foreman, Commerce, Texas—Dear Sir: I herewith inclose to you release to be signed by you for injuries received some time recently, your foot slipping causing you to sit down on bolt projecting up through seat on motor car injuring you.

"In your statement to me of March 1st you failed to give the date of this accident and I am leaving the date of accident blank. In returning this release to me be sure that you give me the date of accident. Upon receipt of this I will issue you voucher for the $9 covering Dr. Cate's bill.

"I would also thank you to see Dr. Cate and have him give you report describing your injuries and send it to me with release.

"You can sign release near the bottom on line where I have made cross-mark with blue pencil.
            "Yours truly,
"RMP        R. M. Patton, General Claim Agent."

Accompanying this letter was the release relied on by the appellant. He opened the envelope containing the papers and read enough of the claim agent's letter to understand that a statement from the doctor was wanted. He then signed the release and returned it on the next train. He signed it hurriedly and without reading it to see what the nature of the instrument was, not thinking that it was a relinquishment of any claim for damages.

The record shows that a few days after the return of these papers to the claim agent the appellee received a voucher for $9, in the usual form, from the appellant, which recited that it was—

"in full settlement, satisfaction and adjustment of any and all claims for damages for personal injuries sustained by B. B. Hurst while in the performance of his duties as section foreman on the Texas Midland Railroad at Commerce, Texas, on or about the 5th day of February, 1921, as per papers attached to duplicate voucher."

It is admitted that this voucher, or check, bore the indorsement of the appellee, and had been paid by the railway company. The claim agent testified that Hurst never made any report to him of any injury, and never mentioned having received any, until after he returned to work. He did not then present any claim, but merely inquired why his doctor's bill had not been paid. During the conversation witness told the appellee to send in his bill with the necessary statement explaining the injury and the extent of the services rendered by the physician. Witness also said, "You understand that you must sign a release." The appellee replied that he expected to sign a release. Some time later witness sent the release, and it came back through the mail properly signed, with the blank dates filled as requested in his explanatory letter.

But discarding the testimony of this witness and taking the appellee's version of what occurred between him and the claim agent, with other facts he admits are true, no legal ground is shown for ignoring the terms of the release. He either read it and understood its contents, or he negligently failed to read it before he signed. He had every opportunity to scrutinize the document, and his haste was all his own. It is not contended in this appeal that he was not of sufficient intelligence to understand the contents of the paper if he had examined it. He admitted on cross-examination that the word "release" was printed at the top of the page in large letters; that while he had never before examined a release, he knew that releases were frequently demanded by the railroad company before settlement of personal injury claims. He further admitted that he read enough of the letter of the claim agent to understand that a statement from his doctor must be inclosed; and in some way, which is not fully explained, such a statement was sent in with the release. The proof shows that the doctor employed was one of the appellee's own selection. It is apparent from the evidence that at the time this settlement was made both appellee and his physician regarded the injuries as slight and thought no further trouble would result. With such a diagnosis it was but natural that the appellee should willingly sign a release at that time, without intending to reserve any claim for further damages. The

evidence shows that, while he was kept from his work a week or 10 days, no deduction was made for loss of time.

[1] A release is a contract, and, like all contracts, it must be enforced according to its plain terms, unless the party seeking to avoid it can show a fraud or a mistake for which he is not responsible. The mere failure to read a contract before signing it furnishes no legal reason for avoiding the obligations which the contract imposes. The rule is thus stated in 6 R. C. L. p. 624:

"A contract signed by mistake, that is, under the supposition that it is an instrument of another or different character, is void. But the courts appear to be unanimous in holding that a person who, having the capacity and an opportunity to read a contract, is not misled as to its contents, and who sustains no confidential relation to the other party, cannot avoid the contract on the ground of mistake if he signs it without reading it, at least in the absence of special circumstances excusing his failure to read it. If the contract is plain and unequivocal in its terms he is ordinarily bound thereby. It is the duty of every contracting party to learn and know its contents before he signs and delivers it. He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement. To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made, or to allow him to admit that he signed it but did not read it or know its stipulations, would absolutely destroy the value of all contracts. The purpose of the rule is to give stability to written agreements, and to remove the temptation and possibility of perjury, which would be afforded if parol evidence was admissible."

[2] In this case there is no evidence of fraud or of mistake. It is simply one of failure to read. None of the conditions which justify a failure to read is shown to have existed. We are therefore of the opinion that the appellee is in law bound by the terms of his contract of settlement, and that the court should have so instructed the jury.

The judgment will be reversed and judgment here rendered for the appellant.

---

⇐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes