## JONES v. GUILFORD MORTGAGE CO. et al.

### No. 12755.

Court of Civil Appeals of Texas. Dallas.

Oct. 29, 1938.

Robert M. Vaughan and J. E. Burkholder, both of Dallas, for appellant.

Geo. T. Burgess and Thompson, Knight, Baker, Harris & Wright, all of Dallas, for appellees.

LOONEY, Justice.

On the 15th instant, we affirmed the judgment below, but did not discuss the merits of the question of law raised by appellee's demurrers to the sufficiency of appellant's allegation on the issue of fraud. Later, the parties requested that the question of law raised, as to the issue of fraud, be discussed and specifically disposed of, and we have concluded to comply with their request; therefore, in order that proper assignments may be urged to our holding on the issue of fraud, as well as on the other issues decided, if so desired, we have set aside our former judgment of affirmance, withdrew the former opinion, but, after a careful reconsideration of the case, for reasons which will now be stated, we again affirm the judgment of the trial court.

The appeal is from an order of the trial court, sustaining a demurrer to appellant's petition for a temporary injunction, thus refusing the temporary writ sought. The application for injunction is based upon an attack on a loan contract between appellant and the Federal Mortgage Company, evidencing a loan of $7,000 by the Mortgage Company to appellant, secured by a deed of trust upon certain real estate described in the petition, wherein appellant, according to the terms of the writings entered into, agreed to pay the loan and interest in 120 monthly payments of $89.81 each; and, while no rate was expressed, the inter-

est to be paid according to the terms of the contract was 9.3% per annum during the life of the loan. Appellant alleged that the Federal Mortgage Company transferred and pledged the note to the American Exchange National Bank, of which the First National Bank in Dallas is successor; that thereafter, the note was transferred to the Equitable Trust Company, the Guilford Mortgage Company acting as agent for the Equitable Trust Company; and that the real estate mortgaged to secure the loan was sold by a substitute trustee, and purchased by the Homeland Realty Company, hence, relief was sought against Federal Mortgage Company, the First National Bank in Dallas, Equitable Trust Company, Guilford Mortgage Company, and the Homeland Realty Company.

The attack made on the loan contract is based on two grounds (subsidiary counts being also urged)—first, that the contract is usurious, and, second, that it is vitiated by fraud, in that, an agent of the Mortgage Company misrepresented to appellant, at the time the contract was entered into that, the rate of interest charged—that is, the rate agreed upon was 5.4% per annum instead of 9.3%, evidenced by the written instruments signed by appellant; that the real estate (the homestead of appellant) had been sold by a substitute trustee, under the terms of the trust deed securing the indebtedness, and was bought in by the Homeland Realty Company, one of the appellees. Appellant prayed that, on final hearing, the sale of the real estate, made by the substitute trustee, be set aside and held for naught; that the notes and deed of trust securing same be held void and removed as clouds on plaintiff's title; that the payments theretofore made by appellant on the $7,000 loan—towit $6,447.84—be credited thereon, and that appellant be decreed to owe and be permitted to pay the balance of $552.16 in full satisfaction, etc., followed by a prayer for alternative relief, alleging in effect that appellees, or one of them, were threatening to cause to be issued some character of writ or process with the view of disturbing appellant's possession of the property; praying for the issuance of a temporary injunction enjoining appellees from disturbing appellant in the peaceful possession of the property under any character of process, pending final determination of the suit; and, on final hearing, that the injunction be made permanent.

The loan contract plead by appellant is identical with the one involved in Federal Mortgage Co. v. Davis, reported in 100 S.W.2d 717, which we held was not usurious, and as our opinion was adopted by the Supreme Court (see 111 S.W.2d 1066), for the same reasons, we hold that, the contract involved in the instant case does not offend the usury laws of the State.

It follows therefore that, in our opinion, the trial court did not err in sustaining the demurrers urged by appellees to appellant's plea of usury.

The question of usury out of the way, the relief sought by appellant, necessarily, is based upon the idea that the loan contract in question was induced by fraud. The substance of the allegations presenting this issue is, to the effect that, appellant sought a loan of $7,000 from the Federal Mortgage Company, that an agent of the company offered to make the loan at an interest rate of 5.4% per annum, payable in 120 monthly installments; that an agreement to that effect was reached, the papers were drawn by the company's agents and presented to appellant for execution, and were executed by him. The loan, as evidenced by these documents, was composed of a first lien note for $7,000, a second and inferior note for $1,370.25, to be paid in 120 monthly installments of $89.81 each; that, out of each of the first 25 installments, $35 was to be credited upon the $7,000 note, and the remainder—$54.81—to be credited upon the note for $1,370.25; and that the remaining 95 installments of $89.81 each were to be credited exclusively upon the note for $7,000. (No rate of interest was specifically mentioned in the contract; but it is easily ascertainable that the rate of interest collectible under the plan adopted could not exceed 9.3% per annum.) Appellant alleged that he did not intend to sign two notes of the tenor and effect mentioned, that is, permitting the collection of 9.3% interest per annum for the life of the note —that the papers signed differed radically from those intended; that prior to and at the time the loan was consummated, appellant was led to believe that he was securing the same at an interest rate of 5.4% per annum, relying upon representations made by the agent of defendant company, and in consequence thereof signed the documents; alleging specifically: "That the papers, notes and deed of trust, taken in connection with representations made by the officers, agents and representatives of the

Federal Mortgage Company prior to, at the time of, and after the loan was made, and the entire conduct of this loan transaction was a part of a plan, scheme, device and subterfuge concocted, planned and deliberately framed, and the papers were so astutely, cleverly and cunningly drawn by the officers, agents, directors, representatives, auditors and accountants of the Federal Mortgage Company and other defendants herein, for the purpose of defrauding the said Robert C. Jones, and to use the said plan, and papers as a cloak to cover the fraudulent intent and purpose of the transaction to defraud the said Robert C. Jones, and conceal from him the true rate of interest to be paid on the loan and the terms of said transaction".

The above, in substance, is appellant's attack upon the loan contract for fraud, by reason of which he seeks the relief prayed for.

■ We think it apparent from appellant's allegations that, subsequent to the alleged preliminary understanding between him and the agent of the company, stipulating for a loan of $7,000, at 5.4% interest per annum, payable in 120 monthly installments, without coercion, and absent any confusing, misleading or other extraneous influence inducing the contract, appellant executed documents, that a simple calculation based upon the recitals therein shows that the payment of 9.3% annual interest on the loan procured was required; and, it is also apparent that, after the loan was thus consummated, appellant paid at least 70 of the 120 monthly installments mentioned in the contract, before the present litigation ensued.

It is true, appellant repeatedly alleged that he was induced to sign the documents, by reason of the false and fraudulent representations of the Loan Company's agent, but these are but conclusions—the facts are as substantially set out above. He also alleged that the plan or set-up of the loan scheme was astutely, cleverly and cunningly devised by agents of the Loan Company to obscure the fraudulent intent and purpose to collect 9.3% interest; but, it seems that the scheme or plan of the loan, as consummated, is the same in substance as the one appellant alleged was tentatively agreed upon before the papers were drawn, the only material difference being that, appellant alleges that it was understood that he was to pay only 5.4% interest per annum, whereas the documents, prepared by

the Company, presented to and executed by him, provided for 9.3% interest per annum.

No fact or circumstance is alleged by appellant, either showing or tending to show that his signature to the documents in question was obtained by any trick or artifice; or that he was illiterate or laboring under any physical or mental disability; or that there existed any relationship of confidence between the parties, or any other fact, forbidding the conclusion that, in executing the documents, appellant either knew and understood their contents, or else was guilty of negligence in failing to read or otherwise familiarize himself with the same.

■ Instruments executed under such circumstances are binding, are not subject to cancellation or to be reformed on the idea that their execution was induced by fraud. The doctrine, prevailing the country over, applicable to the state of facts presented, is announced in 6 R.C.L. 624, 625, sec. 43, as follows: "A contract signed by mistake, that is, under the supposition that it is an instrument of another or different character, is void. But the courts appear to be unanimous in holding that a person who, having the capacity and an opportunity to read a contract, is not misled as to its contents, and who sustains no confidential relation to the other party, cannot avoid the contract on the ground of mistake if he signs it without reading it, at least in the absence of special circumstances excusing his failure to read it. If the contract is plain and unequivocal in its terms he is ordinarily bound thereby. It is the duty of every contracting party to learn and know its contents before he signs and delivers it. He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement. To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made, or to allow him to admit that he signed it but did not read it or know its stipulations, would absolutely destroy the value of all contracts. The purpose of the rule is to give stability to written agreements, and to remove the temptation and possibility of perjury, which would be afforded if parol evidence was admissible * * *. The rule that one who signs a contract is presumed to know its contents has been applied even to contracts of illiterate persons, on the ground that if such persons are unable to read,

they are negligent if they fail to have the contract read to them. If a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents. However, the negligence in such cases consists of the fact that the signor, whether literate or illiterate, fails to read the contract or to have it read * * *". This excerpt from R. C.L. was quoted with approval by the Texarkana Court of Civil Appeals in Texas Midland R. Co. v. Hurst, 262 S.W. 172, 174.

As all relief sought by appellant is based on the contention that the loan contract involved was usurious and tainted with fraud, and as we hold that neither contention is tenable, the judgment of the trial court, refusing the temporary injunctive relief sought, is affirmed.

Affirmed.