## PICKETT v. RILEY et al.

### No. 2293.

Court of Civil Appeals of Texas. Waco.

March 6, 1941.

Rehearing Denied April 17, 1941.

Williford, Williford & Bond and H. H. Vibrock, all of Fairfield, for appellant.

Geppert, Geppert & Victery, of Teague, L. W. Shepperd, of Groesbeck, and J. G. Anderson, of Fairfield, for appellees.

RICE, Chief Justice.

On December 2, 1929, R. A. Pickett executed and delivered to John Riley his promissory note for the principal sum of $2,080.90, payable to the order of Riley on March 2, 1930; and secured the payment thereof by executing, on the same date, a deed of trust on a tract of 120 acres of land, a part of the Kelly survey in Freestone county. This note evidenced the sum of money which Riley, at Pickett's request, paid to the holder of a note then past due and owing by Pickett as a part of the purchase price of said 120-acre tract of land. The deed of trust above mentioned was given in extension and renewal of the lien securing said purchase-money note paid by Riley.

Thereafter, on April 14, 1931, said note being past due and having paid nothing on the principal or interest, Pickett gave to Riley, as additional security for said indebtedness, a deed of trust on a tract of 40 acres and a tract of 32 acres of land out of said Kelly survey; and Riley extended the due date of the note by endorsing upon the back thereof that the same was payable in four annual installments, the first payable on the 15th day of October of the year 1931, which endorsement was signed by R. A. Pickett. On the 7th day of April, 1933, said indebtedness being past due, and no payment of principal or interest having been made thereon, R. A. Pickett executed and delivered to John Riley the instrument in writing which is the subject matter of this litigation, the same being a deed of trust on a tract of 134 acres of land out of the McGraw survey, which deed of trust recited that it was given to secure the aforesaid indebtedness, and further recited: "This deed of trust is given as additional security to secure said note in addition to the lien given to secure said note dated December 2, 1929, as shown by deed of trust from R. A. Pickett, recorded in Vol. B, page 293, of the Deed of Trust Records of said county." On the same date, R. A. Pickett, joined by his wife, Berta Pickett, executed, acknowledged and delivered to John Riley a homestead designation, designating as their homestead the tracts of 120 acres, 40 acres and 32 acres on the Kelly survey and a tract of 8 acres off the west end of a 50-acre tract

out of the McGraw survey. Pickett, his wife and family at that time actually resided on the 120-acre tract of land and had been residing there since 1921, the date of its purchase. In addition to the four tracts of land mentioned in the homestead designation, aggregating 242 acres, Pickett then owned another tract of 134 acres of land out of the McGraw survey; and said five tracts of land adjoined each other.

Thereafter, on January 27, 1934, being again in default in the payment of said indebtedness, principal and interest, R. A. Pickett executed, acknowledged and delivered to John Riley an agreement renewing the above-mentioned note; said extension agreement reciting that the indebtedness so extended was secured by a lien on 120 acres of land out of the Kelly survey, and also as additional security, by a tract of 134 acres of land out of the Daniel McGraw survey, described in Vol. X, page 263, of the Deed of Trust Records of said county. Each of the above-mentioned instruments were, shortly after their execution and delivery, filed with the county clerk of Freestone county and were duly recorded in the records of said county.

Thereafter, in the year 1938, R. A. Pickett having paid nothing on said indebtedness since John Riley took the same over, except the sum of $200, on September 17, 1936, John Riley brought this suit against R. A. Pickett in the district court of Freestone county for the amount of his indebtedness and for foreclosure of his deed of trust liens on the 120-acre tract of land out of the Kelly survey and on the 134-acre tract out of the McGraw survey. No foreclosure was sought on the tract of 40 acres or on the tract of 32 acres out of the Kelly survey, covered by the deed of trust executed in the year 1931, and which two tracts of land were included in the homestead designation of R. A. Pickett and wife, executed in April, 1933; the plaintiff thereby recognizing that he had no lien on said 40-acre and said 32-acre tracts.

Defendant admitted being indebted to the plaintiff on the note sued on, and admitted the validity of the lien securing same on the 120-acre tract out of the Kelly survey, but asserted that the lien on the 134-acre tract out of the McGraw survey was void. Defendant pleaded that shortly prior to April 7, 1933, he proposed to plaintiff that he would secure his debt by a lien on 184 acres out of the McGraw survey, in

lieu of the lien held by plaintiff on defendant's 120 acres, 30 acres and 42 acres out of the Kelly survey; that plaintiff, after inspecting defendant's lands, agreed to the exchange of liens; that on April 7, 1933, plaintiff and defendant met in the office of an attorney in Teague, and the agreement made between them was consummated. He further pleaded that he was seventy-one years of age; that he and plaintiff had had business dealings with each other over a period of more than twenty-five years; that he had great confidence, faith and trust in plaintiff and believed he would do anything he agreed to do; and that defendant, relying on plaintiff's promise, executed the deed of trust on the 134-acre tract without reading the same to determine whether the lands on the Kelly survey were being released therein; that plaintiff made said promise fraudulently, with the intention not to comply therewith, for the purpose of securing additional security for his debt; that plaintiff refused to release his liens on defendant's lands on the Kelly survey, and was thereby estopped to assert the validity of the deed of trust lien on the 134-acre tract; that defendant had no adequate remedy at law and was entitled to cancellation of the lien in question.

Defendant further pleaded that on April 7, 1933, and continuously since said date, he was a married man, and, with his family, was occupying as his homestead the premises described in the aforementioned deeds of trust; that the lien on the 134-acre tract was therefore void; that if he did execute the homestead designation dated April 7, 1933, the same was procured by the fraudulent promises of the plaintiff set forth above, and was a part of the original plan and scheme of the plaintiff to secure additional security on the homestead of defendant; that it was represented to defendant by plaintiff and plaintiff's attorney that to carry out the substitution of liens, it was necessary to execute said homestead designation. Defendant further pleaded that if he did execute the extension of lien, dated January 2, 1934, he was told by plaintiff and plaintiff's attorney that such instrument was a renewal of the note and lien as changed with respect to the substitution of the land on the McGraw survey for that on the Kelly survey, and that the same covered only the lands on the McGraw survey; that he relied on said representations, had had no reason to check his title, and signed same without reading it, and would not have

signed such agreement had he known that it recited he had given a deed of trust lien on the 120 acres on the Kelly and a deed of trust on the 134 acres of land as additional security for the plaintiff's debt; that he did not discover the fraud perpetrated on him until about the 1st day of March, 1936, when he was attempting to secure a loan on his land. He pleaded possession of the lands in controversy, and that limitation, by reason of such possession, had not run against him. Defendant prayed for cancellation of the deed of trust on the 134-acre tract on the McGraw survey and offered to do equity. He also filed a cross-action, setting forth the facts above stated, seeking cancellation of the deed of trust on the 134-acre tract of land, asking that said lien be removed as a cloud on his title, and that said tract of land be fixed as a part of his homestead.

By supplemental petition, plaintiff pleaded the two and four-year statutes of limitation, laches, estoppel, waiver and ratification.

J. J. Coppedge, J. G. Anderson and L. W. Shepperd intervened in said cause, seeking foreclosure of an alleged lien on defendant's land created by the filing and recording, on December 12, 1934, of an abstract of judgment in the Judgment Records of Freestone county.

Defendant, in answer to interveners, pleaded that the tracts of 134 acres and 50 acres out of the McGraw survey were his homestead at the time of the filing of said abstract of judgment, and therefore no lien was fixed on said tracts.

The plaintiff made out his case by the introduction of his note, his deeds of trust and extension agreement. The interveners relied on their judgment and the abstract thereof. The defendant and his wife took the witness stand, they being the only persons who testified during the trial.

At the conclusion of the evidence the court gave an instructed verdict in favor of both the plaintiff and the intervener Coppedge and against the defendant; and thereupon rendered judgment in favor of plaintiff for his debt and for foreclosure of his deed of trust liens on the tract of 120 acres of land on the Kelly survey and the tract of 134 acres on the McGraw survey. Judgment was entered in favor of the intervener, foreclosing his judgment lien on the 50-acre tract on the McGraw survey, less the 8 acres off the west end included in the homestead designation; and

foreclosing said lien on the 134 acres of land on the McGraw survey, subject, however, to plaintiff's first lien thereon.

To these proceedings the defendant duly excepted and perfected his appeal to this court.

It would serve no useful purpose to attempt to set forth in this opinion the testimony of the defendant and that of his wife bearing on the question here involved. Suffice it to say that the trial court afforded defendant's able attorneys every opportunity to elicit from the defendant and his wife all the relevant and material facts bearing on the issue of fraud.

■ We have carefully read and considered all the evidence, and have reached the conclusion that the defendant's assignment of error directed to the action of the trial court in instructing a verdict in favor of plaintiff should be, and the same is, overruled.

Accepting the testimony of defendant and that of his wife as true, the same was not of sufficient probative force to authorize the court to submit the issue of fraud to the jury. Defendant pleaded and testified that the agreement entered into between himself and plaintiff shortly prior to April 7, 1933, and confirmed in the attorney's office in Teague on said date, was that defendant would execute a deed of trust on his lands on the McGraw survey in exchange for the release by plaintiff of the liens then held by him on defendant's lands on the Kelly survey. If this was the agreement, the execution and delivery by defendant of his deed of trust was to be contemporaneous with the execution and delivery by plaintiff of the release which defendant says he agreed to execute and deliver. If defendant's testimony be true, then at the very time that he executed the deed of trust on the 134 acres on the McGraw survey, he must have known that he was then entitled to receive from the plaintiff a release of his lands on the Kelly survey. When he left the attorney's office on that occasion he knew he had not received this release. The defendant's own testimony shows that he was fully aware of the fact that it was necessary to procure a release to clear the title to his 120-acre tract of land. He did not testify that Riley agreed to execute the release at a later date and have the same recorded, nor did he testify to any fact or circumstance which would excuse his failure to demand on that occasion the release which he now says he

was entitled to receive. By his testimony, defendant placed himself in the paradoxical position of insisting that the sole consideration for his execution of the deed of trust he now questions was that the plaintiff was to release the liens which plaintiff then held on defendant's 120-acre tract of land in order that defendant might have a home that was clear; and, having performed his part of the bargain, and being then in a position to demand and receive the release that he sought, he loses all interest in the matter and walks out of the attorney's office without even making a request that the release be delivered to him. Neither the defendant, his wife, nor anyone else, testified that John Riley, or any one of the attorneys present on that occasion, at any time made any statement to the defendant or his wife that the deed of trust executed by the defendant on April 7, 1933, was other than what it purported to be, or said or did anything to prevent defendant from reading said instrument. The defendant was not illiterate; it appears from the statement of facts that he could read and write; that he had bought several tracts of land and had executed notes and liens in payment therefor, and it does not appear that any of his faculties were impaired. The defendant did not testify that he thought when he signed the deed of trust on April 7, 1933, that such instrument released the lien held by the plaintiff on defendant's tract of 120 acres of land on the Kelly survey. He did not testify that when he executed the renewal agreement dated January 2, 1934, and which recited that the deed of trust on the 134-acre tract was given as additional security, the plaintiff, or anyone else, made any statement to him in respect to the contents thereof, other than that the same was a renewal contract in reference to the note he owed plaintiff; nor did he testify that he was prevented from reading the renewal agreement or having the same read to him. He testified that he did not know until February or March, 1936, that plaintiff had not released his lien on the 120-acre tract and was claiming that the deed of trust on the 134-acre tract was given as additional security; but in this connection he offers no explanation of his testimony to the effect that in March, 1934, an oil company, because plaintiff had a loan thereon, refused to accept from him a lease on his 184 acres of land on the McGraw survey, and likewise refused to accept from him a lease on 152 acres of his land on the Kelly

survey, until plaintiff and he had signed and agreed to said leases. The defendant admitted that after he discovered the alleged fraud practiced upon him he made no complaint to anyone, except that he asked plaintiff's attorney on that occasion if the release had not been executed as Riley promised. On the contrary, he testified that several months thereafter he paid plaintiff $200 on his debt and at that time said nothing to plaintiff about being defrauded. Although the deed of trust executed by the defendant and the homestead designation executed by defendant and his wife on April 7, 1933, were forthwith recorded in the records of Freestone county, in which defendant resided, and although the extension agreement executed by the defendant in April, 1934, was likewise placed of record in said county forthwith, the defendant offers no reason or excuse for not ascertaining: (1) that the deed of trust on the 134 acres of the McGraw survey recited that it was given as additional security; (2) that the extension agreement executed by him recited the same fact; (3) that no release had been executed by John Riley and placed of record covering the 120 acres of land prior to April, 1936; except to state that he signed the deed of trust and renewal agreement without reading them or having them read, and that he had no occasion to check his title until 1936.

Neither defendant nor his wife testified to any facts which would show that any special relationship of trust and confidence existed between them and the plaintiff, John Riley.

 The weight of authority sustains the proposition that a person who, having capacity and opportunity to read a contract, is not misled as to its contents, and who sustains no confidential relation to the other party, can not avoid the contract on the ground of mistake if he signs it without reading it, at least, in the absence of special circumstances; that every contracting party owes the duty to the other party to the contract to learn and know the contents of the contract before he signs and delivers it. Jones v. Guilford Mortgage Co., Tex.Civ.App., 120 S.W.2d 1081, 1083. The rule that one who signs a contract is presumed to know its contents, has been applied even to contracts of illiterate persons, on the ground that that if such persons are unable to read, they are negligent if they fail to have the contract read to

them. The courts have well said: "To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made, or to allow him to admit that he signed it but did not read it or know its stipulations, would absolutely destroy the value of all contracts. The purpose of the rule is to give stability to written agreements, and to remove the temptation and possibility of perjury, which would be afforded if parol evidence was admissible." Jones v. Guilford Mortgage Co., supra. See also: Patterson v. Yellow Cab Mfg. Co., Tex.Civ.App., 298 S.W. 918; Boren v. Boren, 38 Tex.Civ.App. 139, 85 S.W. 48; Texas & P. Ry. Co. v. Poe, 131 Tex. 337, 115 S.W.2d 591; Texas Midland R. Co. v. Hurst, Tex.Civ.App., 262 S.W. 172; Indemnity Ins. Co. of North America v. Macatee & Sons, 129 Tex. 166, 101 S.W. 2d 553.

The deed of trust now questioned by the defendant was open to his inspection and he should have known its contents before he signed it. He can not, we think, carelessly fail to examine the instrument and escape the consequences of his own negligence by charging Riley with fraud, without showing acts which Riley did or words which the latter spoke that would prevent or excuse him from reading it and knowing its contents before he executed it. "Where a party with all the solemnity of the law makes a deed containing such a declaration, he will not be heard to say he did not make it, unless he is induced thereto by fraud which disarmed him and prevented him from reading or knowing its contents. He cannot negligently close his eyes. They must have been plastered down by fraud." Parker v. Schrimsher, Tex.Civ.App., 172 S.W. 165, 172. This latter rule, we think, should prevail in this case.

 Defendant's assignment of error directed to the action of the trial court in instructing a verdict in favor of intervener and in awarding judgment against him in favor of the intervener, is sustained. The defendant pleaded and he and his wife testified to the fact that at the time intervener's abstract of judgment was filed in Freestone county, and on all intervening dates, the defendant was a married man and the head of a family; that on each of said dates he and his family lived on, used and occupied as their homestead the 50-acre tract and the 134-acre tract of land on the McGraw survey, and that the same

was therefore exempt and could not be subjected to intervener's lien. Defendant's wife testified, and the plat introduced in evidence showed, that each of defendant's tracts of land adjoined. The fact that defendant and his family lived on the 120-acre tract of land would not prevent the defendant from claiming as a part of his homestead the land owned by him on the McGraw survey. The issue of what land constituted the defendant's homestead on the date that intervener's abstract of judgment was filed in Freestone county should have been submitted to the jury for its determination.

The judgment of the trial court in favor of John Riley and against R. A. Pickett is affirmed; and said judgment in favor of the intervener and against the defendant R. A. Pickett is reversed and remanded.