Clyde Donald **DUTY**, Appellant,

v.

Vicki Jo **IGNASIAK**, Appellee.

No. B2962.

Court of Appeals of Texas, Houston (14th Dist.).

April 22, 1982.

John V. Elick, Elick & Elick, Belliville, for appellant.

Sidney Levine, Sealy, for appellee.

Before PAUL PRESSLER, MURPHY and SAM ROBERTSON, JJ.

SAM ROBERTSON, Justice.

Appellants bring this appeal from a judgment awarding the proceeds of their son's life insurance policy to his fiancee, appellee. At issue is whether the evidence supports the trial court's finding that Mickie Dee Duty, deceased, properly designated appellee as beneficiary of the insurance policy. We affirm.

On January 1, 1980, Mickie Dee Duty, the insured, shot himself,[1] leaving a handwritten note which said, in part, "Vicki, you are my beneficiary and will bury me. And someone make sure she gets my money out of my checking account and keeps the money from my insurance." A copy of the note was subsequently delivered to Businessman's Assurance Company of America, the insurer, by appellee's attorney and the original was filed for probate as the last will and testament of the deceased. Appellants, the divorced parents of the deceased, contested probate of the will and asserted their rights to the proceeds of the life insurance policy.

By the terms of the policy in question, an insured may

> designate a beneficiary *or change his designation* or beneficiary, from time to time *by written request filed with* the Policy-owner or at *the Home Office* of the Company. *Such designation or change shall take effect as of the date of execution* of such request, *whether or not the Individual be living at the time of such filing,* but without prejudice to the Company on account of any payments made by it before receipt of such request at its Home Office. (emphasis added)

In oral argument, appellants asserted that the note written by the deceased was, in effect, a change of beneficiary because under the terms of the policy his parents are the "first named" beneficiaries. We disagree for two reasons. First, the policy provisions are unambiguous and clearly state:

BENEFICIARY: The amount payable by reason of the death of an Individual shall be paid to the beneficiary or beneficiaries *designated by the Individual...*

Except as may be otherwise specifically provided by the individual,

(a) . . .

(b) if no designated beneficiary survives the Individual, or *if no beneficiary has been designated,* payment shall be made

1. We see no reason to dwell on the circumstances leading up to this unfortunate event. Suffice it to say there was testimony that the deceased's parents did not approve of his fiancee and that the previous evening the deceased and his fiancee had argued.

to ... the Individual's parents .... (emphasis added)

It is obvious that the latter provision is an alternate means of determining a beneficiary where no designation has been made by the insured so that the insurer is protected in its payment of the proceeds of the policy. Second, our courts have held although "[a]n insurer may make reasonable regulations in a policy ... defining the method by which a member may change the beneficiary ...," it may also "waive compliance with regulations intended for its benefit." It is the named beneficiary who has "a right, by virtue of the contract, to require that a change be made substantially in accordance with the manner provided." *Scherer v. Wahlstrom*, 318 S.W.2d 456, 458 (Tex.Civ.App.—Ft. Worth 1958, writ ref'd); *Hallett v. Ponder*, 376 S.W.2d 797, 800 (Tex. Civ.App.—Austin 1964, no writ). Clearly the named beneficiary above is one designated by the insured and is distinct from one named only by the terms of a standard form contact. Aside from the plain sense of the language, to rule otherwise would be to invest an insurer with power to name an insured's beneficiary which would be superior to the power exercised by the beneficiary himself.

■ Mickie Duty had not designated a beneficiary prior to writing the note found beside his body. Thus, under the terms of the policy, his parents are the beneficiaries only if the above quoted note of the deceased did not constitute a proper designation of beneficiary.

■ We note initially that all of the cases cited by both appellant and appellee are concerned with a *change* of beneficiary rather than an *original designation* of beneficiary by the insured. In the former situation, numerous cases have stated that in order to effect a *change of beneficiary*, the insured must do "all he reasonably could do" to comply with the terms set out in his policy for such a change. The standard of review is not strict compliance with the terms, but substantial compliance. *Tips v. Security Life & Accident Co.*, 144 Tex. 461, 191 S.W.2d 470 (1945); *Adams v. Adams*, 78 S.W.2d 664, 665 (Tex.Civ.App.—San Antonio 1935, writ dism'd). In addition, on re-

view of a questioned change of beneficiary, the intent of the insured is not at issue. *Kotch v. Kotch*, 251 S.W.2d 520 (Tex.1952).

While we have found no Texas case concerning the appropriate standard of review where an original designation of a beneficiary is at issue, the courts of other jurisdictions have offered us guidance in arriving at the decision we express today.

In *Wheaton National Bank v. Aarvold*, (1976), 38 Ill.App.3d 658, 348 N.E.2d 520, the court said, "In determining who the beneficiary is, it is the intention of the insured which is the controlling element." Quoting Appleman on Insurance, the court continued, "almost any form of words which demonstrates the insured's intention is sufficient.... A designation will be construed, wherever possible to give legal effect thereto." *Wheaton* at 523. In accord is *Dennis v. Modern Brotherhood of America* (1906), 119 Mo.App. 210, 95 S.W. 967, 970. In that case, the court said, "The power of appointment of beneficiaries ... rested exclusively with the ... [insured], as much so as his power to name legatees or devisees in a will, and the rule of construction of wills may very well be applied to the construction of a ... [policy]; that is to say, ... intention ... is the controlling element." *Id.* at 970. Similarly, the court in *Butcher v. Pollard* (1972) 32 Ohio App.2d 1, 288 N.E.2d 204, noted its own "responsibility ... to ascertain and give effect to ... [the insured's] intentions. And, although intention is an intangible commodity, it may nevertheless be gathered indirectly through the insured's chosen words and any relevant circumstances prior to and contemporaneous with his decision." *Id.* at 206.

■ Thus, it seems clear that while the intent of an insured is not relevant to a consideration of whether the insured effectively changed a previous designation of beneficiary, that same intent is controlling in a determination of whether an insured designated a beneficiary originally, as it would in construing testamentary documents.

■ Application of the above rule to the facts and evidence before us today leaves

little room for doubt as to the propriety of the trial court's judgment that "Mickie Duty properly designated Vicki Jo Ignasiak as the beneficiary of his group life insurance policy ... and that he substantially complied with such policy for designating Vicki Jo Ignasiak as his beneficiary...."

The policy requires only a "written request filed with the Policyowner or at the Home Office of the Company." An approved form is not required and the designation need not be approved by the insurer nor endorsed on the policy, as is sometimes required. The designation takes "effect as of the date of execution of such request, *whether or not the Individual be living at the time of such filing....*" (Emphasis added).

It is undisputed that several months before his death Mickie Duty delivered the policy in question to Vicki Jo Ignasiak. His handwritten designation of Vicki as his beneficiary is clear and unambiguous. He left, as one of his last acts, directions that "someone make sure she ... keeps the money from my insurance." This direction was carried out when a copy of his designation of beneficiary was delivered to the home office of the insurer. Under these circumstances, we hold the evidence sufficient to support the judgment.

Appellants' points of error are overruled and the judgment is affirmed.