**Evelyn OATES (Hodge), Appellant,**

v.

**Dorothy HODGE and Louisa Shelley Hodge, Appellees.**

No. 05–85–01070–CV.

Court of Appeals of Texas,
Dallas.

May 22, 1986.

Frederick S. Adams, Graham, Bright & Smith, Dallas, for appellant.

David B. Winston, Dallas, Bruce Abraham, Marshall, for appellees.

Before GUITTARD, C.J., and AKIN and HOWELL, JJ.

AKIN, Justice.

Evelyn Oates appeals from a judgment, after trial to the court, which denied her recovery of the benefits under a group

policy of insurance on the life of Alvin Hodge and awarded them instead to Louisa Shelley Hodge and Dorothy Hodge, the decedent's ceremonial wife and his daughter by a prior marriage. Oates brings two points of error, asserting that: (1) the trial court failed to apply the proper law to the facts; and (2) the trial court's finding that Evelyn Oates was not the same person as Evelyn Hodge (the policy's named beneficiary) was contrary to the undisputed evidence or, alternatively, was so against the great weight and preponderance of the evidence as to be manifestly unjust. We agree that the trial court has misapplied the law and that the uncontradicted evidence shows that Evelyn Oates was the "Evelyn Hodge" identified as the beneficiary of the insurance policy. Consequently, we reverse the judgment of the trial court and render judgment for Evelyn Oates.

Evelyn Oates and Alvin Hodge met in 1972. Sometime thereafter, but prior to 1976, they began cohabitating and referring to one another as husband and wife. However, Evelyn Oates also testified that in 1976 she had a ceremonial marriage to "Mr. Jackson," from whom she was not divorced until 1984 or 1985. The cohabitation of Evelyn Oates and Jackson was apparently quite short-lived, and she thereafter resumed her previous relationship with Alvin Hodge. Late in 1978 Alvin Hodge moved out of the apartment that he and Oates shared, and in July of 1979 he ceremonially married Louisa Shelley Hodge. There is some dispute as to the nature of the relationship between Evelyn Oates and Alvin Hodge after this ceremonial marriage. Louisa Hodge testified that he lived with her from that time until his death in 1982, and that she had no knowledge nor indication of Alvin Hodge's alleged continuing relationship with Evelyn Oates until after Alvin Hodge's death. Evelyn Oates, on the other hand, testified that Alvin Hodge visited her at least once a week, sometimes three times a week, until two or three weeks before he died. She also testified that she had no knowledge of Alvin Hodge's ceremonial marriage with Louisa Hodge until after Alvin Hodge's death.

The only disinterested witness at the trial was Greg Galloway, who had been Alvin Hodge's supervisor at work until Alvin Hodge's death in 1982. Galloway testified, without contradiction, that he had spoken many times with a woman named "Evelyn" who called for Alvin Hodge at his place of employment and that Alvin Hodge had identified her as his wife. Further, Galloway had only Evelyn Oates's phone number with which to reach Alvin Hodge, and he spoke to Evelyn a number of times when he was trying to find out why Alvin Hodge had missed work. Finally, through Galloway, the card designating "Evelyn Hodge" as the beneficiary of the life insurance policy, dated June 20, 1978, and signed by Alvin Hodge, was admitted into evidence. The testimony that Evelyn Oates and Alvin Hodge were living together and referring to one another as husband and wife at the time the beneficiary card was signed by Alvin Hodge in 1978 is uncontroverted.

The trial court found that because of her ceremonial marriage to Mr. Jackson in 1976 Evelyn Oates could not have entered into a marriage relationship with Alvin Hodge at the time the beneficiary designation was made in 1978. It further found that "no evidence supports the conclusion that Evelyn Hodge and Evelyn Oates are the same person insofar as the court finds that the beneficiary designation card ... was signed by the decedent, but not filled in by the decedent." Finally, the court found that Alvin Hodge was not married at the time he signed the beneficiary designation card, assuming it was signed as dated on June 20, 1978. Thus, the trial court apparently erroneously assumed that, if Alvin Hodge and Evelyn Oates (Hodge) were not in fact married when the designation was made, or if Alvin Hodge did not personally fill in the blank listing Evelyn Hodge as the beneficiary but merely signed an already filled out card, Evelyn Oates cannot recover under the policy of life insurance. In this, the trial court erred.

■ In interpreting an insurance contract, as in any other contract, the intent of the parties is the controlling factor. *Drane v. Jefferson Standard Life Ins. Co.*, 139 Tex. 101, 161 S.W.2d 1057, 1061 (1942). In this case, since one party to the contract, the insurance company, is indifferent as to who receives the insurance proceeds, we may determine that issue by determining the intent of the insured decedent. *Id.* The power of the insured to originally designate the beneficiary of the insurance policy has been likened to the power of a testator to name legatees or devisees in a will. *Duty v. Ignasiak*, 633 S.W.2d 654, 656 (Tex.App.—Houston [14th Dist.] 1982, no writ). Thus, the court in *Duty* held that the rule for construing beneficiary designations in wills was equally applicable to such determinations under insurance contracts—intent is the controlling element. *Id.* Finally, we note that designation of a given person raises a presumption that the named person was intended by the insured to receive the proceeds of the policy. *Lewis v. Lewis*, 693 S.W.2d 672, 673 (Tex.App.—San Antonio 1985, no writ); *McDonald v. McDonald*, 632 S.W.2d 636, 638 (Tex.App.—Dallas 1982, writ ref'd n.r.e.).

■ Thus, we presume, because there is no evidence to the contrary, that the decedent, Alvin Hodge, intended "Evelyn Hodge" to receive the proceeds of the insurance policy. It is irrelevant to our analysis that decedent, after designating "Evelyn Hodge," ceremonially married another woman. *See Lewis*, 693 S.W.2d 672; *Pitts v. Ashcraft*, 586 S.W.2d 685, 695–96 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *Partin v. de Cordova*, 464 S.W.2d 956, (Tex.Civ.App.—Eastland 1971, writ ref'd). *See also* TEX.INS.CODE ANN. art. 3.49–1, § 1 (Vernon 1981) (any person designated as beneficiary has an insurable interest in the life of the insured).

■ It is also not relevant that the insured did not personally fill in the blank with the name "Evelyn Hodge." There is no evidence of fraud, misrepresentation, or any other impropriety in the manner in which Alvin Hodge's signature was ob-

tained on the beneficiary designation card. Absent such circumstances, a person is presumed to know the contents of the documents he signs, *Jones v. Guilford Mortgage Co.*, 120 S.W.2d 1081, 1083–84 (Tex. Civ.App.—Dallas 1938, no writ); *Pickett v. Riley*, 149 S.W.2d 990, 994 (Tex.Civ.App.—Waco 1941, no writ), and to intend the results of his signing the document, whether or not he read it or personally filled in the blanks on it. *Indemnity Ins. Co. of North America v. W.C. Macatee & Sons*, 129 Tex. 166, 101 S.W.2d 553, 556 (1937). Therefore, we presume that, by signing the beneficiary designation listing "Evelyn Hodge," Alvin Hodge intended to make that person the beneficiary under his policy of insurance.

■ Finally, the fact that no person legally named "Evelyn Hodge" may exist does not end our inquiry. An error or inaccuracy in a name will not cause the attempted designation of a beneficiary to fail, if the identity of the person intended can be ascertained through extrinsic evidence or by the contents of the document itself. *Hultquist v. Ring*, 301 S.W.2d 303 (Tex.Civ.App.—Galveston 1957, writ ref'd n.r.e.). In *Hultquist*, a testator had signed a will with a bequest to "Alma" King. The court of appeals reversed a judgment in favor of an "Alma" King, because the overwhelming evidence showed that the name was intended to be "Elmer" King, and that through a clerical error it was miswritten. Here, there is no evidence of a clerical mistake, but there is a dispute about the person to whom the decedent was referring. We hold that, in a designation of a beneficiary under an insurance contract, when an error is made in the name such that a dispute arises as to the identity of the beneficiary, extrinsic evidence of the insured's intent will be admitted and, if the insured's intent can be determined, it will control disposition of the insurance proceeds.

■ In this case it is undisputed that: (1) decedent Alvin Hodge was living with Evelyn Oates at the time he signed the beneficiary designation card; (2) decedent Alvin

Hodge identified Evelyn to his supervisor at work as his wife for a number of years; (3) the beneficiary designation card was filled out at Alvin Hodge's place of employment; (4) decedent Alvin Hodge was not married to anyone other than Evelyn Oates at the time the beneficiary designation card was completed; and (5) decedent Alvin Hodge did not know or have any type of relationship with anyone else named "Evelyn" during the relevant time periods. Further, there is no contention that Alvin Hodge ever attempted to change the designation of beneficiary as made on that card. Consequently, we conclude that the intent of Alvin Hodge when he signed the card in 1978 has been shown by the uncontroverted evidence to be that Evelyn Oates (Hodge) receive the insurance proceeds of the life insurance. Accordingly, we reverse the judgment of the trial court and render judgment that Evelyn Oates recover all proceeds under the policy of life insurance on Alvin Hodge, deceased.

Reversed and rendered.