NUMBER
13-03-530-CV

 

                         COURT
OF APPEALS

 

               THIRTEENTH
DISTRICT OF TEXAS

 

                  CORPUS
CHRISTI - EDINBURG

___________________________________________________________________

 

     IN THE ESTATE OF RAYMOND EDWARD FALLS, DECEASED



___________________________________________________________________

 

                 On
appeal from the County Court at Law 

                        of
San Patricio County, Texas.

___________________ 
_______________________________________________

 

                     MEMORANDUM
OPINION[1]

 

       Before
Chief Justice Valdez and Justices Hinojosa and Rodriguez

                      Memorandum
Opinion by Justice Rodriguez

 








This is an appeal from a directed verdict granted in
favor of appellee, A.G. Edwards & Sons, Inc.  The trial court granted appellee=s motion and rendered a directed verdict that (1)
appellant, Peggy Falls, take nothing on her claim for the contested portion of
her deceased husband=s IRA proceeds and (2) that the contested portion go
to the deceased=s daughter, Edwina Mellon.  By her sole issue, appellant claims that
appellee did not conclusively prove that Mellon was entitled to the contested
portion of the deceased=s IRA account and that the trial court therefore
should not have granted the directed verdict. 
We affirm the trial court=s ruling.

I.  Background








The deceased, Raymond Falls, opened an IRA account
with appellee in 1989.  In 1994, he
designated his three daughters as beneficiaries to receive equal thirds of the
balance of the account upon his death. 
In 2000, however, Mr. Falls filled out a new beneficiary designation
form.  Appellee asserts that the deceased
filled out the new form in order to ensure that his daughters were the
beneficiaries of the account.  On the new
form, the blanks beside two of the deceased=s
daughters= namesBAnita Vanderstucken and Sandra HollingerBdesignated 33 1/3 percent of the IRA account to
them, while the blank beside the third daughter=s nameBEdwina MellonBonly designated 3 1/3 percent of the IRA account to
her.  Appellee claims that the entry of 3
1/3 percent instead of 33 1/3 percent was a mutual mistake on the part of Mr.
Falls and appellee, and that appellee did not know of the mutual mistake until
after Mr. Falls=s death.  The
beneficiary designation form stated that if the designator does not designate a
beneficiary, the article concerning distribution to beneficiaries in the
Custodial Account Agreement will govern the distribution and that beneficiaries
will receive equal percentages unless otherwise noted.  The Custodial Account Agreement stated, AIf no designated beneficiary survives you, or if no
beneficiary designation is in effect at your death, your IRA balance will pass
to your surviving spouse, or if you have no surviving spouse, to your estate.@  Appellant
argues that this language entitles her to the remaining 30 percent of the
IRA.  After Mr. Falls=s death, appellant accordingly asserted a claim to 30
percent of Mr. Falls=s IRA account. 
The three daughters and appellee contested appellant=s claim.  At
the close of appellant=s evidence at the trial, the trial court granted an
directed verdict against appellant and in favor of appellee.[2]  This appeal ensued.

II.  Claim for
Contested Portion of Deceased=s IRA Account

By her sole issue, appellant challenges the trial
court=s directed verdict precluding her recovery of 30
percent of the deceased=s IRA account. 
Appellant contends that the trial court erred because there was evidence
of facts essential to appellant=s recovery and appellee did not conclusively prove that
Mellon was entitled to 30 percent of the IRA claimed by appellant.  We disagree.

A directed verdict is proper when the evidence
conclusively proves a fact that establishes a party=s right to judgment as a matter of law.  Koepke v. Martinez, 84 S.W.3d
393, 395 (Tex. App.CCorpus Christi 2002, pet. denied).  The trial court should direct a verdict when
reasonable minds can draw only one conclusion from the evidence.  Vance v. My Apt. Steak House, Inc.,
677 S.W.2d 480, 483 (Tex. 1984); Collora v. Navarro, 574 S.W.2d 65, 68
(Tex. 1978); Koepke, 84 S.W.3d at 396.








 In reviewing
a directed verdict, the appellate court must determine whether there is any evidence
of probative force to raise a fact issue on the material questions presented.  See Collora, 574 S.W.2d at 68; McDonald
v. State, 936 S.W.2d 734, 736 (Tex. App.CWaco
1997, no writ) (citing Szczepanik v. First S. Trust Co., 883 S.W.2d 648,
649 (Tex. 1994)).  The court should
consider all evidence in the light most favorable to the party against whom the
verdict was instructed, discarding all contrary evidence and inferences.  See Collora, 574 S.W.2d at 68; McDonald,
936 S.W.2d at 737.  The court may,
however, consider uncontradicted evidence favorable to the movant.  See Nichols v. Nichols, 727 S.W.2d
303, 306 (Tex. App.CBeaumont 1987, writ ref=d n.r.e.). 
Furthermore, when no evidence of probative force on an ultimate fact
element exists, or when the probative force of testimony is so weak that only a
mere surmise or suspicion is raised as to the existence of essential facts, a
directed verdict is proper.  Kingston
v. Helm, 82 S.W.3d 755, 758 (Tex. App.BCorpus Christi 2002, pet. denied); Villarreal v.
Art Inst. of Houston, Inc., 20 S.W.3d 792, 796 (Tex. App.BCorpus Christi 2000, no pet.).








Similar to construing a contract, interpreting a
beneficiary designation form requires a determination of the party=s intent.  See Goff v. Southmost Sav. & Loan Ass=n, 758
S.W.2d 822, 825 (Tex. App.CCorpus Christi 1988, writ denied) (providing Athe primary object of contract construction is to
arrive at the intentions of the parties@); Oates v. Hodges, 713 S.W.2d 361, 364 (Tex.
App.CDallas 1986, no writ) (setting out that intent of
parties is controlling factor in interpreting an insurance contract).  In Texas, it is presumed that a testator
intended to account for all his assets.  See McGill v. Johnson, 799 S.W.2d 673, 676
(Tex. 1990).  Furthermore, the decedent=s designation of an identifiable person raises the
presumption that the named person was intended to receive those assets.  See Oates, 713 S.W.2d at 364. 

Appellant contends the fact that no beneficiary
designation to a named beneficiary was in effect for the remaining 30 percent
of the IRA at the time of Mr. Falls=s death means that the 30 percent should pass to her
in accordance with the language in the Custodial Account Agreement.  Appellant additionally argues that Mr. Falls
intended her to receive the 30 percent because Mellon had failed to repay a
loan to her father.  Appellant thus
concludes that Mellon cannot recover more than the 3 1/3 percent designated to
her on the beneficiary designation form. 








Generally, a party cannot recover more than the
terms of the contract allow him to recover. 
See generally Allen v. Manhattan Fire & Marine Ins. Co., 519
S.W.2d 706, 707 (Tex. App.CEl Paso 1975, no writ).  If a written contract fails to reflect a
party=s original agreement due to a mutual mistake,
however, the court may reform the contract to properly reflect the party=s true agreement.  See Cherokee Water Co. v. Forderhause, 741
S.W.2d 377, 379 (Tex. 1987); Goff, 758 S.W.2d at 826.  Reformation is available in circumstances in
which the minds of the parties have met as to the terms of their agreement but,
by mutual mistake, the writing commemorating the parties= agreement does not truly reflect their
intentions.  See Henderson v.
Henderson, 694 S.W.2d 31, 34 (Tex. App.CCorpus
Christi 1985, writ ref=d n.r.e.).  To
prove a mutual mistake, the evidence must show that the parties to an agreement
(1) were acting under the same misunderstanding of the same material fact, and
(2) had a common intention not reflected in the written contract.  See Okon v. Mbank, N.A., 706 S.W.2d
673, 675 (Tex. App.BDallas 1986, writ ref=d
n.r.e.).  A mutual mistake is usually
established by Aall of the facts and circumstances surrounding the
parties and the execution of the instrument.@  See Henderson, 694 S.W.2d at 34.

In this case, the trial court did not err in
rendering a directed verdict if the evidence establishes that the beneficiary
designation form did not reflect the true agreement between appellee and Mr.
Falls due to a mutual mistake.  See
Thalman v. Martin, 635 S.W.2d 411, 413 (Tex. 1982).  Uncontradicted extrinsic evidence shows both
Mr. Falls=s intent with respect to the disposition of his IRA
account and A.G. Edwards= agreement with him in accord with that intent.  See Valero Energy Corp. v. Teco Pipeline Co.,
2 S.W.3d 576, 589 (Tex. App.CHouston [14th Dist.] 1999, no pet.) (AParol evidence is admissible to show mutual mistake.@). 
Specifically, appellee presented the following testimony of John Hepner,
Mr. Falls=s registered representative at A.G. Edwards for more
than eleven years:

Q:        How
emphatic was Mr. Falls about where he wanted his money to go? A little, a
medium, or a lot?

 

A:        A
lot.

Q:        Why
do you say that?

A:        He
called me and said he very, very, very definitelyCalmost
with a sense of,Ba sense of urgency of  action of being sure that his daughters were
the beneficiaries of this I.R.A.

 

Q:        In
its entirety?

A:        He
said nothing to the contrary. Absolutely.

* * * * *








Q:        When
he [Mr. Falls] contacted you [Mr. Hepner], what did he want at                      that time?

 

A:        He
wanted to be sure his daughters were the beneficiaries of the IRA.

Q:        Could
you tell him the answer to that right then?

A:        No, I
could not.

Q:        Then
what did you do?

A:        Therefore,
what I suggested that Mr. Falls do was come in, pick up a new I.R.A.
beneficiary form whereby he could designate his daughters as the beneficiaries
of the I.R.A.

 

Hepner had this conversation with Mr. Falls within
approximately two weeks of Mr. Falls completing the form. His testimony negates
any inference that Mr. Falls changed the 1994 beneficiary designation form to
treat his daughters unequally; instead, the uncontradicted testimony
establishes that Mr. Falls filled out a new beneficiary designation form
because Hepner could not be sure that Mr. Falls=s
daughters were in fact the beneficiaries of the IRA account.[3]   








Hepner also testified that the new beneficiary
designation form erroneously failed to reflect Mr. Falls=s true agreement with A.G. EdwardsCthat A.G. Edwards would distribute one-third of the
assets in the account to each of Mr. Falls=s three daughters. 
The new form gave 3 1/3 percent to Mellon instead of the 33 1/3 percent
that the form designated to her sisters. 
The form did not reflect the true agreement between Mr. Falls and A.G.
Edwards, and, therefore, Mr. Falls=s true intent. 
Hepner did not know that the beneficiary designation form did not
reflect Mr. Falls and A.G. Edwards=s intentions until appellant=s counsel informed him of the 3 1/3 percent
designation months after Mr. Falls=s death. 
Moreover, this evidence was uncontradicted as Hepner was the only
witness who testified about the mutual mistake. 
Appellant called no other witnesses and presented no other evidence on
this issue. 

Thus, in light of all the evidence in favor of
appellant and all uncontradicted evidence in favor of appellee, we cannot
reasonably infer, as appellant argues, that Mr. Falls intended to leave Mellon
only 3 1/3 percent.  That inference is
not permissible because direct, uncontradicted evidence shows that Mr. Falls
intended for his daughters to receive equal portions of the assets and that he
filled out a new form to ensure that they each received equal portions.  Similarly, no one knew about the error until
after Mr. Falls=s death; therefore, it is also unreasonable to
infer, as appellant argues, that Mr. Falls knew he designated 3 1/3 percent and
that he intentionally chose not to correct the difference.  Finally, appellant=s suggested inference that Mr. Falls intentionally
chose not to give Mellon an equal share of the IRA account due to her failure
to pay back a loan is not supported by any evidence.  Therefore, we conclude that appellee met its
burden of proving mutual mistake. 
Accordingly, appellee has established its right to judgment as a matter
of law.  

 








III. 
Conclusion

The trial court did not err when it rendered a
directed verdict in favor of appellee, precluding appellant=s recovery of 30 percent of the IRA account.  Appellant=s
issue is overruled, and the trial court=s judgment is affirmed.

 

NELDA V. RODRIGUEZ

Justice

 

Memorandum Opinion
delivered and 

filed this 4th day of
August, 2005.

 











[1]See Tex. R.
App. P. 47.2, 47.4.





[2]
We note that Mr. Falls=s daughters are not parties to this
appeal. 





[3]
Under Texas Rule of Evidence
701, a lay witness may offer opinion or inference testimony about another
person=s state of mind based on the
witness=s perception.  See Tex.
R. Evid. 701; Ethicon, Inc. v. Martinez, 835 S.W.2d 826, 832
(Tex. App.CAustin 1992, writ denied); see
also Tex. R. Evid. 602
(providing that a witness may not testify to matter unless "evidence is
introduced sufficient to support a finding that he has personal knowledge of
the matter").